# EXHIBIT B

# 1684CV01193 Kahn,Litwin,Renza & Co Ltd vs. Earthlink Inc

| | | | |
|---|---|---|---|
| **Case Type** | Business Litigation | **Case Status** | Open |
| **Status Date:** | 04/12/2016 | **File Date** | 04/11/2016 |
| **Case Judge:** | | **DCM Track:** | |
| **Next Event:** | | | |

**All Information**  |  **Party**  |  **Docket**  |  **Disposition**

## Party Information

**Kahn,Litwin,Renza & Co Ltd - Plaintiff**

| Alias | Attorney/Bar Code | Phone Number |
|---|---|---|
| | Snow, Esq., Steven E (554167) | |

More Party Information

**Earthlink Inc - Defendant**

| Alias | Attorney/Bar Code | Phone Number |
|---|---|---|

More Party Information

**One Communications Corp - Defendant**

| Alias | Attorney/Bar Code | Phone Number |
|---|---|---|

More Party Information

## Docket Information

| Docket Date | Docket Text | File Ref Nbr. |
|---|---|---|
| 04/11/2016 | Original civil complaint filed. | 1 |
| 04/11/2016 | Civil action cover sheet filed. n/a | 2 |
| 04/12/2016 | Attorney appearance<br>On this date Steven E Snow, Esq. added for Plaintiff Kahn,Litwin,Renza & Co Ltd | |
| 05/13/2016 | Service Returned for<br>Defendant One Communications Corp: Service through person in charge / agent; | 3 |
| 05/18/2016 | General correspondence regarding Notice of Acceptance into Business Litigation Session<br>This case is assigned to BLS2 (dated 5/17/16) notice sent 5/18/16 | 4 |
| 06/10/2016 | Service Returned for<br>Defendant Earthlink Inc: Service made in hand; | 5 |

## Case Disposition

| Disposition | Date | Case Judge |
|---|---|---|
| Pending | | |

# Commonwealth of Massachusetts



SUFFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION

No. 16-1193

KAHN, LITWIN, RENZA & CO., LTD. , Plaintiff(s)

v.

EARTHLINK BUSINESS, LLC and ONE COMMUNICATIONS CORP. Defendant(s)

## SUMMONS

To the above-named Defendant: EarthLink Business, LLC

You are hereby summoned and required to serve upon Jennifer L. Luzzi, Esq.
Partridge Snow & Hahn LLP

plaintiff's attorney, whose address is 40 Westminster Str. #1100, Providence, RI 02903 an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at Boston either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness, Judith Fabricant, Esquire, at Boston, the _____ day of
_____ May _____, in the year of our Lord two thousand _____ sixteen _____.

*Michael Joseph Donovan*

Clerk/Magistrate

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.
3. TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED
   (1) TORT — (2) MOTOR VEHICLE TORT — (3) CONTRACT — (4) EQUITABLE RELIEF — (5) OTHER

FORM CIV. P. 1 12M—1/15

# PROOF OF SERVICE OF PROCESS

I hereby certify and return that on _____, 201___, I served a copy of the within summons, together with a copy of the complaint in this action, upon the within-named defendant, in the following manner (See Mass. R. Civ. P. 4 (d) (1-5):

_____

_____

_____

Dated:_____, 201____.          _____

**N.B.    TO PROCESS SERVER: –**
**PLEASE PLACE DATE YOU MAKE SERVICE ON DEFENDANT IN**
**THIS BOX ON THE ORIGINAL AND ON COPY SERVED ON DEFENDANT.**

| , 201 . |
| --- |

**Commonwealth of Massachusetts**

SUFFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION
No. _____ 16-1193

Kahn, Litwin, Renza & Co., LTD _____, Plff(s).

v.

Earthlink Business, LLC and One Communications
Corp. _____, Deft(s).

SUMMONS
(Mass. R. Civ. P. 4)

(AFFIX FILING STAMP HERE)

## COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.
SUPERIOR COURT DEPARTMENT
C. A. NO. 16-1193

KAHN, LITWIN, RENZA & CO., LTD,

        Plaintiff

v.

EARTHLINK BUSINESS, LLC and ONE
COMMUNICATIONS CORP.,

        Defendants

## FIRST AMENDED COMPLAINT

### Parties

1.     The Plaintiff, Kahn, Litwin, Renza & Co., Ltd, ("KLR"), is a Rhode Island corporation engaged in the practice of public accounting with a principal place of business at 951 North Main Street, Providence, Rhode Island 02904. KLR also has an office located at 800 South Street, Suite 300, Waltham, Massachusetts 02453.

2.     Defendant EarthLink Business, LLC ("EarthLink") is a Delaware corporation with a principal place of business at 1170 Peachtree Street, Suite 900, Atlanta, Georgia 30309.[1]

3.     Defendant One Communications Corp. ("One Communications") is a Delaware corporation with a principal place of business at 1170 Peachtree Street, Suite 900, Atlanta, Georgia 30309.

### Facts

4.     On or about May 20, 2009, KLR entered into a twelve (12) month contract (the "Internet Contract") with One Communications pursuant to which One Communications agreed

---

[1] The original Complaint filed in this matter incorrectly named EarthLink, Inc. as a defendant. All other allegations set forth in this First Amended Complaint are identical to those alleged in the previously filed Complaint.

to provide KLR with a 6MB direct internet access line to KLR's Waltham office located at 800 South Street, Waltham, Massachusetts. A true and accurate copy of the Internet Contract is incorporated herein by reference and attached hereto as Exhibit A.

5. One Communications agreed to a twelve (12) month term for the Internet Contract. True and correct copies of email communications concerning this agreement are attached hereto as Exhibit B.

6. On or about June 9, 2009, KLR entered into a second contract (the "Phone Contract") with One Communications, pursuant to which One Communications agreed to provide KLR with four (4) basic phone lines and a 1.5M PRI that provided voice and data services over a T1 line. A true and accurate copy of the Phone Contract is incorporated herein by reference and attached hereto as Exhibit C. The Internet Contract and the Phone Contract are hereinafter collectively referred to as the "Contracts."

7. It was discussed and understood by KLR and One Communications that all services provided under the Contracts would terminate after the respective twelve (12) month terms, between May, 2010 and June, 2010, respectively.

8. Accordingly, as of June, 2010, KLR stopped using any of the services provided by One Communications.

9. Despite the termination of the Contracts, One Communications continued to invoice KLR for services not rendered.

10. KLR's accounts payable department inadvertently continued to pay the invoices sent by One Communications from June, 2010 through December, 2010.

11. Upon information and belief, EarthLink acquired One Communications on or about April 1, 2011.

2

12.     EarthLink began to invoice KLR for services not rendered based on the Contracts entered into by and between KLR and One Communications.

13.     As a result of receiving these invalid invoices, KLR's accounts payable department mistakenly paid the invoices it was sent by EarthLink from December, 2010 through January, 2013.

14.     On or about January 29, 2013, KLR contacted EarthLink's regional office in Marlborough, Massachusetts to advise them of the erroneous billing and was instructed to formally request that services be terminated.

15.     On or about January 29, 2013, KLR completed EarthLink's Disconnect Request Form ("Disconnect Form") and submitted the same.

16.     In or about January, 2013, two (2) EarthLink technicians visited KLR's Waltham office to confirm the non-use of EarthLink services.

17.     During the January, 2013 visit, the EarthLink technicians confirmed that KLR was not using any EarthLink equipment and that KLR was instead being provided with data services from another service provider.

18.     EarthLink continued to invoice KLR from January, 2013 through April, 2013.

19.     KLR completed an additional Disconnect Form on April 22, 2013.

20.     EarthLink continued to invoice KLR from April, 2013 through July, 2015 for services that had not been provided since May, 2010.

21.     In or around July, 2015, KLR learned that its accounts payable department was inadvertently paying EarthLink invoices.

22.     On July 27, 2015, KLR submitted yet another Disconnect Form to EarthLink. A true and accurate copy of the fax received by EarthLink is incorporated herein by reference and

attached hereto as Exhibit D.

23.     On July 28, 2015, KLR received notification from EarthLink that its Disconnect Form was received. A true and accurate copy of the email correspondence received by KLR from EarthLink is incorporated herein by reference and attached hereto as Exhibit E.

24.     In August, 2015, EarthLink continued to make several attempts to clarify the disconnection of KLR services.

25.     On August 10, 2015, KLR called EarthLink and left a voicemail message with Kristen Shaper, an Account Representative of EarthLink.

26.     On August 12, 2015, KLR again called EarthLink and spoke with Barbara Wilmet from EarthLink.

27.     On August 27, 2015, KLR called EarthLink and spoke to Kristen Shaper from EarthLink who despite stating that she would call KLR back did not do so.

28.     On August 27, 2015 KLR submitted another Disconnect Form to EarthLink which was received by EarthLink.

29.     On August 31, 2015 EarthLink sent KLR a final invoice for services.

30.     On August 31, 2015 KLR called EarthLink and left a voicemail message. This phone call was not returned.

31.     On August 31, 2015 KLR emailed EarthLink and was eventually told to contact Customer Care.

32.     On September 1, 2015 KLR called EarthLink and left a voicemail message. This phone call was not returned.

33.     Between May, 2010 through July, 2015, KLR has paid a total of $139,591.90 in connection with invoices erroneously issued for services not rendered.

34.     Accordingly, EarthLink has been unjustly enriched in the amount of $139,591.90.

## COUNT I
### (Breach of Contract)

35.     KLR repeats, realleges and incorporates the allegations contained in Paragraphs 1 through 34 as if each were fully set forth herein.

36.     The Plaintiff and One Communications entered into two (2) valid, binding, and enforceable contracts.

37.     Despite the Contracts' termination in May, 2010 and June, 2010 respectively, One Communications continued to invoice KLR for services not rendered.

38.     Subsequently, One Communications was purchased by EarthLink on or about April 1, 2011.

39.     EarthLink invoiced KLR for services not rendered, in breach of the Contracts entered into by and between KLR and One Communications.

40.     The Plaintiff has performed all of its obligations under the contracts.

41.     Defendants are in breach of the contracts as detailed above.

42.     As a result of these breaches undertaken by Defendants, as described herein, the Plaintiff has suffered and continues to suffer damages in the amount of $139,591.90.

WHEREFORE, the Plaintiff, requests that judgment enter in its favor and that it be awarded damages in the sum of $139,591.90, together with interest, plus additional costs and expenses including attorneys' fees, and for such other relief as this Court deems just and proper.

## COUNT II
### (Breach of the Covenant of Good Faith and Fair Dealing)

43.     KLR repeats, realleges and incorporates the allegations contained in Paragraphs 1 through 42 as if each were fully set forth herein.

44. The Contracts carry with them an implied covenant of good faith and fair dealing between the parties.

45. By the conduct described in this Complaint, Defendants have breached their covenant of good faith and fair dealing to KLR.

46. As a result of Defendants' actions, KLR has suffered damages, including costs and attorneys' fees.

WHEREFORE, the Plaintiff, requests that judgment enter in its favor and that it be awarded damages in the sum of $139,591.90, together with interest, plus additional costs and expenses including attorneys' fees, and for such other relief as this Court deems just and proper.

**COUNT III**
**(Negligent and/or Intentional Misrepresentation)**

47. KLR repeats, realleges and incorporates the allegations contained in Paragraphs 1 through 46 as if each were fully set forth herein.

48. Defendants made misrepresentations to agents of KLR concerning the disconnection of EarthLink services.

49. The misrepresented facts were material.

50. Defendants knew of the representations or made them under circumstances in which it should have known of their falsity.

51. KLR justifiably relied on the misrepresentations and was injured thereby.

WHEREFORE, the Plaintiff, requests that judgment enter in its favor and that it be awarded damages in the sum of $139,591.90, together with interest, plus additional costs and expenses including attorneys' fees, and for such other relief as this Court deems just and proper.

<h2 style="text-align:center">COUNT IV<br>Unjust Enrichment</h2>

52.    KLR repeats, realleges and incorporates the allegations contained in Paragraphs 1 through 51 as if each were fully set forth herein.

53.    Benefits, including but not limited to funds, were conferred upon Defendants by KLR.

54.    Defendants have appreciated and continue to appreciate these benefits.

55.    Defendants have failed and refused to pay back the value of the benefits.

56.    Defendants' acceptance, appreciation, and use of these benefits without paying the value thereof are inequitable and unjust.

57.    As a result of the unjust enrichment, KLR has been damaged and continues to be damaged.

WHEREFORE, the Plaintiff, requests that judgment enter in its favor and that it be awarded damages in the sum of $139,591.90, together with interest, plus additional costs and expenses including attorneys' fees, and for such other relief as this Court deems just and proper.

<h2 style="text-align:center">COUNT V<br>(M.G.L. c. 93A, § 11)</h2>

58.    KLR repeats, realleges and incorporates the allegations contained in Paragraphs 1 through 57 as if each were fully set forth herein.

59.    At all relevant times, Plaintiff and Defendants are persons engaged in trade or commerce within the meaning of M.G.L. c. 93A, §§ 2 and 11.

60.    The above-described conduct constitutes an unfair and deceptive act or practice under M.G.L. c. 93A.

61.    Defendants' conduct was a willful and knowing violation of 93A.

62.    As a result of Defendants' use and employment of unfair and deceptive acts and

practices, Plaintiff has suffered and will continue to suffer a loss of money.

WHEREFORE, the Plaintiff, requests that judgment enter in its favor and that it be

awarded damages in the sum of $139,591.90, together with interest, plus statutory damages equal

to three times the amount of Plaintiff's actual damages, as determined in accordance with M.G.L.

c. 93A §§ 2 and 11, plus additional costs and expenses including attorneys' fees, and for such

other relief as this Court deems just and proper.

**JURY DEMAND**

KLR hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

KAHN, LITWIN, RENZA & CO., LTD.

By its Attorneys,

Steven E. Snow, Esq. (BBO #554167)
Jennifer L. Luzzi, Esq. (BBO #693387)
PARTRIDGE SNOW & HAHN LLP
40 Westminster Street, Suite 1 100
Providence, Rhode Island 02903
(401) 861-8200
(401) 861-8210 FAX
ses@psh.com
jll@ph.com

Dated: May \|\|, 2016

2751501_1/7669-53

8

Exhibit A

# Service Agreement

| Install Address | Product/Service | QTY | Term (Months) | Non-Recurring Charges Unit Price | Non-Recurring Charges Extended | Monthly Recurring Charges Unit Price | Monthly Recurring Extended | Notes |
|---|---|---|---|---|---|---|---|---|
| 800 South St, Waltham, MA 02453 | 5MB DIA | 1 | 12 | $999.00 . | $999.00 | $0.00 | $1220.00 | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | Billing & Collections Fee | 0 | | | | | $0.00 | |
| | End User Common Line Charge (EUCL) | 0 | | $0.00 | $0.00 | $0.00 | $0.00 | |
| | Local Number Portability (LNP) Charge | 0 | | $0.00 | $0.00 | $0.00 | $0.00 | |



One Communications Corp Proprietary
© Copyright 2000 - 2009 One Communications Corp. All rights reserved

# Service Agreement

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | Presubscribed Interexchange Carrier Long Distance (PILD) Charge | 0 | | $0.00 | $0.00 | $0.00 | $0.00 |
| | Instate Access Recovery Fee (IARF) | 0 | | $0.00 | $0.00 | $0.00 | $0.00 |
| | Administrative Support Charge | 0 | | $0.00 | $0.00 | $0.00 | $0.00 |
| | | | | | | | |
| RCRF of 3.5% will apply to all interstate charges.<br>A \$9.95 billing and collections fee applied to monthly invoice for each customer location that receives a paper invoice. | | | | | $0.00 | | $1220.00 |
| | | | | | | | |
| | OneSolutions Mobile:* | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| *One Solutions Mobile will be billed separately. | | | TOTAL: | 0 | | | 0 |

By signing this Service Agreement (this "**Agreement**"), the Customer identified below ("**Customer**") hereby orders from One Communications the products/services listed above (each a "**Service**" and collectively, the "**Services**"). For purposes of this Agreement, "**One Communications**" means one or more subsidiaries of One Communications Corp. that is/are certified to provide the Service(s) in the applicable state(s).

The term with respect to each Service shall begin on the earlier of the date the Service is available for use by Customer or Customer's commencement of use of the Service (the "**Billing Activation Date**") and shall continue for a period of months thereafter as set forth above (the "**Service Term**"), unless earlier terminated in accordance with the terms of this Agreement. One Communications makes no representation or warranty as to when Service will commence. One Communications will use its commercially reasonable efforts to initiate Service as soon as possible, but Customer understands and acknowledges that Service initiation is dependent upon the actions of third parties not under the control of One Communications. If Customer orally orders additional Services or features from One Communications at one or more of the locations covered by this Agreement, this Agreement shall also apply to any such additional Services and/or features unless a new agreement is executed by Customer specifically covering such services and/or features. Services ordered by Customer may not be resold without the prior written approval of One Communications.

Unless Customer has provided One Communications with written notice of its intention to terminate the Service(s) at least thirty (30) days prior to the end of the Service Term, the Service Term shall automatically renew on a month-to-month basis, at the rate(s) specified above, until either party terminates the Service(s) by giving the other party not less than thirty (30) days prior written notice of termination.

All invoices are due and payable within thirty (30) days from the date of invoice. Should Customer fail to pay any undisputed amount when due, Customer shall pay interest on such unpaid amount at the rate of one percent (1.0%) per month until such sum is paid in full. Customer shall notify One Communications in writing of any charge or amount disputed, in good faith, within thirty (30) days of Customer's receipt of the applicable invoice. In no event shall Customer's notice of a good faith dispute relieve Customer from its obligation to pay, in full, all undisputed charges and amounts. Customer shall bear the risk of loss arising from any unauthorized or fraudulent use of the Services unless such fraud resulted from the gross negligence or willful misconduct of One Communications.



One Communications Corp Proprietary.
© Copyright 2007—2008, One Communications Corp. All rights reserved.

# Service Agreement

In addition to the monthly recurring charge(s) and nonrecurring charges, if any, set forth in this Agreement, Customer also agrees to pay (i) unless and until Customer provides One Communications with satisfactory evidence of its exemption from such impositions, all applicable federal, state and local taxes (other than taxes on One Communications net income), imposed on, or with respect to, the Services and any customer premise equipment ("CPE") provided by One Communications, (ii) all governmental fees and/or surcharges in effect from time to time including, but not limited to, Universal Service Fund (USF), E-911, state TRS and payphone surcharges, required or permitted by applicable law, rule or regulation, to be charged to Customer, (iii) fees for special features or services requested by the Customer such as hunting, directory listing, 800 service, inside wiring/cabling and DMARC extension, and (iv) any originating access charges or fees that are actually charged by the incumbent local exchange carrier to One Communications as a result of the unique configuration of the Service.

In the event this Agreement is terminated following its execution by both parties but prior to the Billing Activation Date, certain cancellation fees may apply. Details regarding One Communication's cancellation policy can be found on its website at http://www.onecommunications.com/legal/terms.aspx. If Customer disconnects a Service prior to the end of the applicable Service Term (or if One Communications disconnects the Service as a result of a default by Customer), Customer is obligated to pay One Communications an early termination fee calculated in accordance with the applicable One Communications tariff or as specified in the special terms and conditions and/or service addendum for the specific Service, as applicable. The specific termination liability associated with the various services offered by One Communications can be located on its web site at http://www.onecommunications.com/legal/terms.aspx.

EXCEPT AS PROVIDED IN THE SERVICE LEVEL AGREEMENT, IF ANY, APPLICABLE TO THE SERVICE, ONE COMMUNICATIONS MAKES NO WARRANTY, EITHER EXPRESS OR IMPLIED, AS TO ITS FACILITIES, THE SERVICE, OR ANY EQUIPMENT, INCLUDING WITHOUT LIMITATION, WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR USE OR PURPOSE, OR THAT ANY SERVICE WILL BE UNINTERRUPTED OR ERROR-FREE. ONE COMMUNICATIONS DOES NOT AUTHORIZE ANYONE TO MAKE A WARRANTY ON ITS BEHALF AND CUSTOMER MAY NOT RELY ON ANY SUCH STATEMENT OR WARRANTY AS A WARRANTY OF ONE COMMUNICATIONS.

One Communication's liability to Customer for any cause of action arising out of this Agreement or the Services shall in no event exceed a credit equal to the Service charge to Customer for the affected Service for the period during which such Service was interrupted or unavailable. Under no circumstance shall One Communications be liable to Customer or any third party for damages arising from delays in commencement of Service, loss of information, numbering or directory listing errors, or loss of business. Without limiting the foregoing, in no event shall either party (or its affiliates, employees, officers, directors or agents) be liable to the other party for any incidental, indirect, special, punitive, or consequential damages (including, but not limited to, lost revenue, goodwill, lost profits or lost customers) of any kind whatsoever, regardless of cause or the foreseeability thereof and whether the affected party had reason to know of the possibility of such losses.

One Communications reserves the right to deliver the Services using such technology or combination of technologies as it chooses from time to time and Customer acknowledges that the delivery of the Services over certain technologies may require the installation of CPE provided by One Communications. All CPE provided by One Communications will, at all times, remain the property of One Communications. In the event that Customer fails to return any CPE to One Communications (or, at One Communications' option, to permit recovery of CPE by One Communications) in good working order, reasonable wear and tear accepted, within thirty (30) days after termination of the Service(s), Customer shall be responsible for the full replacement cost of the CPE and shall pay One Communications all charges associated with the recovery of that equipment.

One Communications may cooperate with law enforcement organizations that have lawfully requested pursuant to a valid subpoena or court order (i) trap and traces, pen registers, wire taps and similar call intercept methods, and (ii) information regarding Customer or any end user of Customer and provide such organizations with any information requested, including, but not limited to, names, email addresses, mailing or contact addresses, IP addresses, telephone numbers, call detail records, or call content.

To the extent that the Services ordered hereby are voice services, converged service consisting of both voice and internet or data services such Services are also subject to the terms and conditions of One Communications' federal and/or state tariffs or rate sheets, as applicable. Alternatively, to the extent that the Services ordered hereby are exclusively internet, MPLS, collocation, off-net DSL or voicemail, such Services are also subject to (i) One Communications' Basic Terms and Conditions of Service (the "T&C's"), and (ii) any specific terms and conditions that may apply to such Services, each of which are available on One Communications' web site at http://www.onecommunications.com/legal/terms.aspx. One Communications reserves the right to modify its tariffs, rate sheets, the T&C's and any special terms and conditions at any time and from time-to-time provided, however, that no such amendment or modification shall affect the monthly access charges associated with the Service(s) during the Service Term. The applicable portions of One Communications' tariffs, rates sheets, the T&C's and the special terms and conditions are hereby expressly incorporated herein by this



# Service Agreement

reference. In the event of any conflict between the tariffs and this Agreement, the tariffs shall prevail and in the event of any conflict between the T&C's and this Agreement, this Agreement shall prevail.

The obligation of One Communications to provide the Services to Customer is subject to approval by One Communications of this Agreement and Customer's credit status. Customer's signature below constitutes authorization for One Communications to obtain credit information from any credit bureau or other investigative agency pertaining to the credit and financial condition of Customer. Customer understands that, as a result of this credit review, it may be required to submit a cash deposit or guaranty in order to receive the Services. In addition, in the event that One Communications determines, in good faith, that the credit worthiness of Customer has materially deteriorated following the commencement of the Service Term, One Communications' reserves the right to require from Customer a cash deposit or such other security as One Communications may reasonably require.

This Agreement, together with (i) (x) in the case of a Service that is voice, converged voice and internet or data, the applicable tariffs and rate sheets, or (y) in the case of a Service that is internet, MPLS, collocation, off-net DSL or voicemail, the T&C's and any applicable special terms and conditions, (ii) any service level agreement for the Service(s), (iii) the quality assurance program document, (iv) the One Communications 90-day service guarantee, and (v) any addendum hereto mutually agreed by the parties, sets forth the entire understanding of the parties and supersedes any and all prior agreements, arrangements and understandings relating to the subject matter of this Agreement. A copy of the quality assurance program document and the 90-day service guarantee are available on One Communications' web site at http://www.onecommunications.com/legal/terms.aspx. This Agreement may only be amended, modified or supplemented by an instrument in writing executed by an authorized representative of each party and specifically stating that the parties intend to modify, amend or supplement this Agreement. This Agreement may not be assigned by Customer without the prior written consent of One Communications, which consent may not be unreasonably withheld, conditioned or delayed. The allocation of a billing telephone number to Customer does not create a property right therein and Customer has no right to assign, sell or otherwise transfer any telephone number to another person or entity. The foregoing restriction does not, however, restrict the ability of Customer to port an assigned number to another service provider of its choice. This Agreement may be executed in one or more counterparts, all of which taken together shall constitute one and the same instrument.

Any legal notice to be sent by Customer to One Communications shall be sent to the attention of the General Counsel of One Communications at the following address: 5 Wall Street, Burlington, MA 01803, (F) 781-362-1598. Any legal notice to be sent by One Communications to Customer shall be sent to the address set forth on the signature page to this Agreement.

This Agreement shall be governed by, and construed in accordance with, the laws of the State in which the majority of the Services ordered hereby are being provided, without regard to its conflict of law principles. EACH OF THE PARTIES HERETO HEREBY VOLUNTARILY AND IRREVOCABLY WAIVES TRIAL BY JURY IN ANY ACTION OR OTHER PROCEEDING BROUGHT IN CONNECTION WITH THIS AGREEMENT.

There are 0_____ addendums applicable to this Agreement. _____ (If any number other than zero is selected, an authorized representative of Customer must place his/her initials on the foregoing line.)

CPNI Authorization:

Under federal law, Customer has the right, and One Communications has a duty, to protect certain information about Customer such as the quantity, technical configuration, type, destination, amount of usage and bill details that One Communications maintains about Customer derived solely through its customer-carrier relationship ("CPNI"). By initialing below, Customer consents to the sharing of its CPNI or other personal information with One Communications and its successors-in-interest, agents and contractors solely for the purpose of developing or bringing to Customer's attention any products and services. This consent is valid until revoked by Customer. To revoke this consent at any time, Customer must notify One Communications, in writing, at 5 Wall Street, Burlington MA 01803, Attention: Contract Administration, and provide the following information: (i) Customer name, (ii) Service billing address, (iii) telephone number(s), including area code(s), and (iv) Service account number. _____ (Customer must place its initials on the foregoing line).

[Remainder of Page Intentionally Left Blank]



One Communications Copy Proprietary
Rev. date: January 2009     © Copyright 2006 - 2009 One Communications Corp. All rights reserved     Page 4

# Service Agreement

ONE COMMUNICATIONS

By: _(Signature of Authorized One Communications Representative)_

Name (please print): __Ryan J Porter__

Title: __Senior Account Executive__

Date: __5/18/2009__

Customer: __Kahn, Litwin Renza & Co., Ltd__
_(Insert Full Legal Business Name of Customer)_

By: _(Signature of Authorized Representative of Customer)_ __1/21/09__

Name (please print): __Todd Knapp__

Title: __IT Director__

Address for Legal Notices: __951 North Main St, Providence, RI 02904__

Attention: __Account Payable__
Fax Number for Legal Notices: _____

Billing Address:
(if different from legal address specified above) __951 North Main St. Providence, RI 02904__

Billing Contact email address: _____

Billing Telephone No.: __401-274-2001__

Date: __5/18/2009__

To the extent that Internet Services are ordered hereunder, the terms of One Communications' Acceptable Use Policy, applies. The OneSolutions℠ Essential, OneSolutions℠ Enhanced, RealBusiness Sense Unlimited Local and Toll Service; RealBusiness Sense Unlimited Local, Toll and Long Distance Service; Customizer℠ Service; Unlimited UltraT Service; Advantage Unlimited Service; Unlimited Local Business Line; and Unlimited Business Line; are not available for purchase by auto dialers, telemarketers, dial-up Internet service providers, call centers and similar type of businesses. In the event that One Communications determines that the above-noted Customer is such a company, One Communications shall be entitled to either (i) terminate any such Service in which case Customer shall be obligated to pay any applicable termination liability associated with a breach of contract by Customer, or (ii) charge the Customer measured service rates.

To the extent that the Services purchased by Customer hereunder are off-net Services purchased under a 1, 2 or 3 year term plan, the discount associated with such Services, not the price quoted, is guaranteed for the applicable Service Term.

This quote is firm for thirty (30) days from the date specified above unless indicated differently herein. Alterations or changes after thirty (30) days may be made at the discretion of One Communications without notice.



# Credit Application

Corporate Headquarters Information

| Company Name: | Contact: | | |
|---|---|---|---|
| Kahn, Litwin Renza & Co., Ltd. | Alan Litwin | | |
| Company Address: | City: | State: | Zip Code: |
| 951 North Main St. | Providence | RI | 02904 |
| Email Address: | Phone: | Fax: | |
| alitwin@kahnlitwin.com | 401274-2001 | | |

**Corporate Information**

- ☒ Corporation
- ☐ Partnership
- ☐ Limited Liability Partnership
- ☐ Sole Proprietorship
- ☐ Limited Liability Company
- ☐ Other

If other, please specify:

Primary Business Activity (please describe):     8-Digit Industry Code:

Years in Business:     Federal Tax ID Number: 0031473

Tax Exempt Status:    ☐ Federal   ☐ State   ☐ Local   ☐ Other, please specify:

*(Must Attach Tax Exempt Certificate(s))*

**Ownership Information (Required for Partnerships, Sole Proprietorships and Small Businesses)**

| Name: | Phone: | SS#: | |
|---|---|---|---|
| Address: | City: | State: | Zip Code: |
| Name: | Phone: | SS#: | |
| Address: | City: | State: | Zip Code: |
| Name: | Phone: | SS#: | |
| Address: | City: | State: | Zip Code: |

Cox Communications Corp. Proprietary
© Copyright 2005 - 2008 Cox Communications Corp.
Date Made: February 2008     All rights reserved.

# Quality Assurance Program

## PROCESS OVERVIEW

This section provides an overview of how your service will be established with One Communications and when billing will commence for such service. A representative of One Communications will guide you through the specific steps as your order moves through the implementation process.

— Order Confirmation Call: After submission of your Service Agreement and associated paperwork, a One Communications representative will contact you to review your order for completeness and accuracy and to validate pricing. If your order is complex in nature, it may be assigned to a One Communications Sales Engineer who will additionally assess technical configuration requirements and schedule, if necessary, a site survey with you and your equipment vendor(s).

— Circuit Delivery Call: If your order requires the installation of a new last mile circuit, you will be contacted by a representative within fourteen (14) business days after the Order Confirmation Call to inform you of the scheduled circuit delivery date. All installations will be completed between the hours of 8:00 AM and 5:00 PM (weekdays only). Additionally, if you have ordered new telephone numbers, the numbers will be provided to you during the Circuit Delivery Call. It is important to note that these numbers are NOT GUARANTEED until AFTER your service has been activated. As such, distribution or publication of telephone numbers prior to service activation is discouraged and at your own risk.

— Equipment Installation, Testing and Circuit Acceptance: Your circuit will be tested and accepted from the last mile provider within five (5) business days of being delivered. A One Communications technician may be scheduled to arrive at your service location to install any required One Communications equipment, dependent upon services ordered. For data orders, documentation will be provided by the technician detailing assigned IP addresses and other important information for the establishment of your Internet access and email services.

One Communications cannot guarantee delivery of any voice and/or data service. In the event that One Communications identifies physical last mile facilities obstructions, limitations or impedances, you will be notified and proper justification will be provided along with potential options.

— Service Establishment

- Data Service: Service is deemed available at the time the circuit is accepted by One Communications. The technicians will have tested for connectivity to the Internet at the time of their site visit. You will need to complete any required inside wiring (providing connectivity from any One Communications customer premise equipment placed at your service location to your own network equipment) and any required configurations of your own equipment.

- Voice Telephone Service: You will need to complete any required inside wiring (providing connectivity from any One Communications customer premise equipment placed at your service location to your own network equipment) and any required configurations of your own equipment.

   — New Telephone Number Assignments: A One Communications representative will notify you of the date that your new telephone numbers are scheduled for turn up. At turn up, One Communications will test your new telephone service and any additional calling features that you ordered to ensure that your service is fully operational.

   — Telephone Number Porting: When transferring (or "porting") existing telephone numbers from your existing provider to One Communications, the following additional steps will occur:

     Confirmation Call of Scheduled Number Porting Date

       • With New Circuits: Within five (5) business days after circuit acceptance by One Communications, if applicable, you will receive a call from a representative to inform you of the scheduled date of the number conversion.

       • Using Existing Circuits: If your telephone service is being delivered on existing circuits, you will receive a call within ten (10) business days after the Order Confirmation Call, to notify you of the specific time and date of the number conversion.

     ▪ Completion of Number Porting: Depending on the specifics of your order, on the scheduled port over date you will receive a call or a visit from a One Communications technician to complete the turn up and testing of your telephone service. At this time, One Communications will test your telephone service and any additional calling features ordered to ensure that your service is functioning properly.

— Commencement of Billing

- Data Service (and ancillary services of Email, Web Hosting, or Domain Name Services): Billing will commence at the time of service establishment. In the event of a delay that is not directly caused by One Communications, billing will commence no later than five (5) business days from the date of circuit acceptance by One Communications.

- Voice Telephone or Integrated Service: Billing will commence at the time your service is established (for both new telephone number assignments or for numbers being ported from your previous carrier). In the event of a delay that is not directly caused by One Communications, billing will commence no later than fifteen (15) business days from (a) in the case of new circuits, the date that One Communications accepts the applicable circuit, or (b) in the case of number porting orders, the Confirmation Call of Scheduled Number Porting Date.



# Quality Assurance Program

## ROLES AND RESPONSIBILITIES

To ensure a smooth implementation of your services, One Communications will require close collaboration among it, your representative(s) and those of your equipment vendor(s) (if applicable). It is important that all parties clearly understand their respective roles and responsibilities and that we work together closely during the service implementation process.

--- **One Communications' Responsibilities**

- Ordering the required circuit(s).

- Delivering, installing and maintaining any One Communications required equipment—a Network Interface Device ("NID"), an Integrated Access Device ("IAD"), a modem or a router at the required service location(s).

- Coordinating with you and your equipment vendors to ensure the successful installation of your new One Communications' services.

- Installing, testing and accepting your new service(s).

- Providing accurate and timely monthly billing for subscribed-to services.

--- **Customer's Responsibilities**

- Providing access to, or arranging access for, One Communications' technicians at the applicable service delivery point (telephone/data closet or room).

- As needed, providing appropriate secure and safe space and electrical power for any One Communications' equipment necessary to support the service.

- Providing all required inside wiring and cabling necessary to connect the service from the service delivery point terminal blocks to your telephone equipment and/or data routers.

- Coordinating any scheduled downtime of your network to accommodate all necessary turn up and testing activities.

- Providing and coordinating the scheduling of appropriate technical personnel, in-house and/or other third party vendors, as required, at the time of the various stages of the installation process.

- Upon service installation, notifying your previous carrier(s) of service cancellation with them.



One Communications Corp. Proprietary
© Copyright 2008 - 2009 One Communications Corp. All rights reserved.

# Exhibit B

## Porter, Ryan

**From:** Slm@onecommunications.com
**Sent:** Wednesday, May 20, 2009 12:12 PM
**To:** Porter, Ryan; Gamache, David
**Subject:** Kahn Litwin Renza & Co - Special Pricing Accepted: 122270

ORDERID: 122270
CUSTOMER: Kahn Litwin Renza & Co
SALES REP: Ryan Porter
---rjporter - 5/20/2009 11:19:04 AM---
Client requesting 6MB DIA on 1yr term for $1220. We presented this on 3yr, they had us in the past and had problems but their IT director is giving us another shot. They agreed to get us paperwork by cob today if we can meet this number. Thanks
---rjporter - 5/20/2009 11:19:51 AM---
Requesting 0 NRC
---dgamache - 5/20/2009 11:32:58 AM---
---kmurray - 5/20/2009 12:11:54 PM---
Approve 1 year term for OS DIA 6Mb @ $1220 MRC, contingent on deal closing this month.
Special pricing approved by kmurray on 05/20/09 with MRC of $1,220.00 and NRC of $.00.

This message was addressed to: rjporter@onecommunications.com;dgamache@onecommunications.com;;

**Lynn Baril**

From: Rathier, Andrew <ARathier@OneCommunications.com>
Sent: Wednesday, May 20, 2009 12:20 PM
To: Jason Malloney; Todd Knapp
Subject: New 12 Month Term
Attachments: KLR 6MB TSA (12mth).doo

Jason/Todd,

Here is the new agreement for a 12 month term at the same price. I explained to Jason on the phone that I have several order managers lined up to push this into the system today basically condensing 1 week of back office time to this afternoon. So the sooner I get this back the better. You can either email the signed document back to me scanned or fax it to 401-834-3319.

Thank you guys! We'll have to do lunch sometime so I can to an official presentation on what we have to offer.

Regards,

Andrew Rathier
Sales Engineer - Rhode Island/South Eastern Mass.
One Communications
24 Albion Rd
Lincoln, RI 02865
ph: 401-834-3347
fax: 401-834-3319
email: arathier@onecommunications.com

Exhibit C

# Service Agreement

| Address | Product/Service | Qty | Term (months) | Non-Recurring Charge | Recurring Credit | Total Non-Recurring Charge | Rate |
|---------|-----------------|-----|------|--------|----------|---------|-----|
| 800 South St. Waltham, MA 02453 | 1.5 ONE Complete Unlimited Local PRI | 1 | 12 | $599.00 | ($599.00) | $0.00 | $450.00 | |
| | Local Usage Rate | 1 | 12 | 0 | 0 | 0 | | Unlimited |
| | Toll Usage Rate | 1 | 12 | 0 | 0 | 0 | | 0.035pm |
| | LD Usage Rate | 1 | 12 | 0 | 0 | 0 | | 0.032pm |
| | 100 DID Block | 1 | 12 | 0 | 0 | 0 | $10.00 | |
| | Basic Business Line Measured | 4 | 12 | $48.00 | ($48.00) | $0.00 | $77.96 | |
| | Local Usage Rate | 4 | 12 | 0 | 0 | 0 | | 0.016pm |
| | Toll Usage Rate | 4 | 12 | 0 | 0 | 0 | | 0.035pm |
| | LD Usage Rate | 4 | 12 | 0 | 0 | 0 | | 0.032pm |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | Billing & Collections Fee | 0 | 0 | 0 | 0 | 0 | 0 | |
| | End User Common Line Charge (EUCL) | 0 | 0 | 0 | 0 | 0 | 0 | |
| | Local Number Portability (LNP) Charge | 0 | 0 | 0 | 0 | 0 | 0 | |



# Service Agreement

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | Presubscribed Interexchange Carrier Long Distance (PILD) Charge | 0 | 0 | 0 | 0 | 0 | 0 | |
| | Instate Access Recovery Fee (IARF) | 0 | 0 | 0 | 0 | 0 | 0 | |
| | Administrative Support Charge | 0 | 0 | 0 | 0 | 0 | 0 | |

| | | | | **RCRF(?)** | **$$$(?)** | |
|---|---|---|---|---|---|---|
| RCRF of 5.5% will apply to all interstate charges. A $9.99 billing and collections fee applied to monthly invoice for each customer location that receives a paper invoice. | | | | $0.00 | $537.98 | |

| | OneSolutions Mobile* | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

| *One Solutions Mobile will be billed separately. | | **TOTAL:** | 0 | | | 0 | |
|---|---|---|---|---|---|---|---|

By signing this Service Agreement (this "**Agreement**"), the Customer identified below ("**Customer**") hereby orders from One Communications the products/services listed above (each a "**Service**" and collectively, the "**Services**"). For purposes of this Agreement, "**One Communications**" means one or more subsidiaries of One Communications Corp. that is/are certified to provide the Service(s) in the applicable state(s).

The term with respect to each Service shall begin on the earlier of the date the Service is available for use by Customer or Customer's commencement of use of the Service (the "**Billing Activation Date**") and shall continue for a period of months thereafter as set forth above (the "**Service Term**"), unless earlier terminated in accordance with the terms of this Agreement. One Communications makes no representation or warranty as to when Service will commence. One Communications will use its commercially reasonable efforts to initiate Service as soon as possible, but Customer understands and acknowledges that Service Initiation is dependent upon the actions of third parties not under the control of One Communications. If Customer orally orders additional Services or features from One Communications at one or more of the locations covered by this Agreement, this Agreement shall also apply to any such additional Services and/or features unless a new agreement is executed by Customer specifically covering such services and/or features. Services ordered by Customer may not be resold without the prior written approval of One Communications.

Unless Customer has provided One Communications with written notice of its intention to terminate the Service(s) at least thirty (30) days prior to the end of the Service Term, the Service Term shall automatically renew on a month-to-month basis, at the rate(s) specified above, until either party terminates the Service(s) by giving the other party not less than thirty (30) days prior written notice of termination.

All invoices are due and payable within thirty (30) days from the date of invoice. Should Customer fail to pay any undisputed amount when due, Customer shall pay interest on such unpaid amount at the rate of one percent (1.0%) per month until such sum is paid in full. Customer shall notify One Communications in writing of any charge or amount disputed, in good faith, within thirty (30) days of Customer's receipt of the applicable invoice. In no event shall Customer's notice of a good faith dispute relieve Customer from its obligation to pay, in full, all undisputed charges and amounts. Customer shall bear the risk of loss arising from any unauthorized or fraudulent use of the Services unless such fraud resulted from the gross negligence or willful misconduct of One Communications.



# Service Agreement

In addition to the monthly recurring charge(s) and nonrecurring charges, if any, set forth in this Agreement, Customer also agrees to pay (i) unless and until Customer provides One Communications with satisfactory evidence of its exemption from such impositions, all applicable federal, state and local taxes (other than taxes on One Communications net income), imposed on, or with respect to, the Service, any equipment (e.g., routers, phone systems and switches) purchased by Customer from One Communications, and any customer premise equipment of One Communications that is provided by One Communications to deliver the Services ("CPE"), (ii) all governmental fees and/or surcharges in effect from time to time including, but not limited to, Universal Service Fund (USF), E-911, state TRS and payphone surcharges, required or permitted by applicable law, rule or regulation, to be charged to Customer, (ii) fees for special features or services requested by the Customer such as hunting, directory listing, 800 service, inside wiring/cabling and DMARC extension, and (iv) any originating access charges or fees that are actually charged by the incumbent local exchange carrier to One Communications as a result of the unique configuration of the Service.

In the event this Agreement is terminated following its execution by both parties but prior to the Billing Activation Date, certain cancellation fees may apply.  Details regarding One Communication's cancellation policy can be found on its website at http://www.onecommunications.com/legal/terms.aspx.  If Customer disconnects a Service prior to the end of the applicable Service Term (or if One Communications disconnects the Service as a result of a default by Customer), Customer is obligated to pay One Communications an early termination fee calculated in accordance with the applicable One Communications tariff or as specified in the special terms and conditions and/or service addendum for the specific Service, as applicable. In the case of OneSolutions Complete, OneSolutions Dedicated Internet, OneSolutions Digital Voice, OneSolutions Enhanced, OneSolutions MPLS VPN, OneSolutions IP PBX and One Solutions Managed Router services, the early termination liability is an amount equal to the applicable monthly fixed charges for such service multiplied by the number of months remaining in the Service Term or renewal term, as the case may be, plus any expenses incurred by One Communications to discontinue any third party services or circuits used in providing the Service.  In the case of One Solutions Basic Business Lines and One Solutions Essential services, the applicable early termination liability also includes any non-recurring charge waived by One Communications to establish such Service(s). The specific termination liability associated with other services offered by One Communications can be located on its web site at http://www.onecommunications.com/legal/terms.aspx.

EXCEPT AS PROVIDED IN THE SERVICE LEVEL AGREEMENT, IF ANY, APPLICABLE TO THE SERVICE, ONE COMMUNICATIONS MAKES NO WARRANTY, EITHER EXPRESS OR IMPLIED, AS TO ITS FACILITIES, THE SERVICE, OR ANY EQUIPMENT, INCLUDING WITHOUT LIMITATION, WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR USE OR PURPOSE, OR THAT ANY SERVICE WILL BE UNINTERRUPTED OR ERROR-FREE.  ONE COMMUNICATIONS DOES NOT AUTHORIZE ANYONE TO MAKE A WARRANTY ON ITS BEHALF AND CUSTOMER MAY NOT RELY ON ANY SUCH STATEMENT OR WARRANTY AS A WARRANTY OF ONE COMMUNICATIONS.

One Communication's liability to Customer for any cause of action arising out of this Agreement or the Services shall in no event exceed a credit equal to the Service charge to Customer for the affected Service for the period during which such Service was interrupted or unavailable.  Under no circumstances shall One Communications be liable to Customer or any third party for damages arising from delays in commencement of Service, loss of information, numbering or directory listing errors, or loss of business.  Without limiting the foregoing, in no event shall either party (or its affiliates, employees, officers, directors or agents) be liable to the other party for any incidental, indirect, special, punitive, or consequential damages (including, but not limited to, lost revenue, goodwill, lost profits or lost customers) of any kind whatsoever, regardless of cause or the foreseeability thereof and whether the affected party had reason to know of the possibility of such losses.

One Communications reserves the right to deliver the Services using such delivery technology and/or facilities as it chooses from time to time and Customer acknowledges that the delivery of the Services over certain technologies may require the installation of CPE owned by One Communications.  All CPE provided by One Communications will, at all times, remain the property of One Communications.  In the event that Customer fails to return any CPE to One Communications (or, at One Communications' option, to permit recovery of CPE by One Communications) in good working order, reasonable wear and tear excepted, within thirty (30) days after termination of the Service(s), Customer shall be responsible for the full replacement cost of the CPE and shall pay One Communications all charges associated with the recovery of that equipment.

One Communications may cooperate with law enforcement organizations that have lawfully requested pursuant to a valid subpoena or court order (i) trap and traces, pen registers, wire taps and similar call intercept methods, and (ii) information regarding Customer or any end user of Customer and provide such organizations with any information requested, including, but not limited to, names, email addresses, mailing or contact addresses, IP addresses, telephone numbers, call detail records, or call content.

To the extent that the Services ordered hereby are voice services, converged service consisting of both voice and internet or data services such Services are also subject to the terms and conditions of One Communications' federal and/or state



tariffs or rate sheets, as applicable. Alternatively, to the extent that the Services ordered hereby are managed services (e.g. managed router, managed IP-PBX), exclusively Internet, MPLS, colocation, off-net DSL or voicemail, such Services are also subject to (i) One Communications' Basic Terms and Conditions of Service (the "T&C's"), and (ii) any specific terms and conditions that may apply to such Services, each of which are available on One Communications' web site at http://www.onecommunications.com/legal/terms.aspx. One Communications' reserves the right to modify its tariffs, rate sheets, the T&C's and any special terms and conditions at any time and from time-to-time provided, however, that no such amendment or modification shall increase the monthly access charges associated with the Service(s) during the Service Term. The applicable portions of One Communications' tariffs, rate sheets, the T&C's and the special terms and conditions are hereby expressly incorporated herein by this reference. In the event of any conflict between the tariffs and this Agreement, the tariffs shall prevail and in the event of any conflict between the T&C's or any special terms and conditions and this Agreement, this Agreement shall prevail.

The obligations of One Communications to provide the Services to Customer is subject to approval by One Communications of this Agreement and Customer's credit status. Customer's signature below constitutes authorization for One Communications to obtain credit information from any credit bureau or other investigative agency pertaining to the credit and financial condition of Customer. Customer understands that, as a result of this credit review, it may be required to submit a cash deposit or guaranty in order to receive the Services. In addition, in the event that One Communications determines, in good faith, that the credit worthiness of Customer has materially deteriorated following the commencement of the Service Term, One Communications' reserves the right to require from Customer a cash deposit or such other security as One Communications may reasonably require.

This Agreement, together with (i) (x) in the case of a Service that is voice, converged voice and Internet or data, the applicable tariffs and rate sheets, or (y) in the case of a Service that is a managed service, Internet, MPLS, colocation, off-net DSL or voicemail, the T&C's and any applicable special terms and conditions, (ii) any service level agreement for the Service(s), (iii) the quality assurance program document, (iv) the One Communications 60-day service guarantee, and (v) any addendum hereto mutually agreed by the parties, sets forth the entire understanding of the parties and supersedes any and all prior agreements, arrangements and understandings relating to the subject matter of this Agreement. A copy of the quality assurance program document and the 60-day service guarantee are available on One Communications' web site at http://www.onecommunications.com/legal/terms.aspx. This Agreement may only be amended, modified or supplemented by an instrument in writing executed by an authorized representative of each party and specifically stating that the parties intend to modify, amend or supplement this Agreement. This Agreement may not be assigned by Customer without the prior written consent of One Communications, which consent may not be unreasonably withheld, conditioned or delayed. The allocation of a billing telephone number to Customer does not create a property right therein and Customer has no right to assign, sell or otherwise transfer any telephone number to another person or entity. The foregoing restriction does not, however, restrict the ability of Customer to port an assigned number to another service provider of its choice. This Agreement may be executed in one or more counterparts, all of which taken together shall constitute one and the same instrument.

Any legal notice to be sent by Customer to One Communications shall be sent to the following address: 5 Wall Street, Burlington, MA 01803, (F) 781-362-1369. Any legal notice to be send by One Communications to Customer shall be sent to the address set forth on the signature page to this Agreement.

This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York, without regard to its conflict of law principles. EACH OF THE PARTIES HERETO HEREBY VOLUNTARILY AND IRREVOCABLY WAIVES TRIAL BY JURY IN ANY ACTION OR OTHER PROCEEDING BROUGHT IN CONNECTION WITH THIS AGREEMENT.

There are 0_____ addendums applicable to this Agreement. _____. By signing this Agreement below, either manually or via e-signature, Customer certifies as to the accuracy of the number referenced in this paragraph.

CPNI Authorization:

Under federal law, Customer has the right, and One Communications has a duty, to protect certain information about Customer such as the quantity, technical configuration, type, destination, amount of usage and bill details that One Communications maintains about Customer derived solely through its customer-carrier relationship ("CPNI"). By signing this Agreement either manually or via e-signature, Customer consents to the sharing of its CPNI or other personal information with One Communications and its successors-in-interest, agents and contractors solely for the purpose of developing or bringing to Customer's attention other products and services. This consent is valid until revoked by Customer. To revoke this consent at any time, Customer must notify One Communications, in writing, at 5 Wall Street, Burlington, MA 01803, Attention: Contract Administration, and provide the following information: (i) Customer name, (ii) Service billing address, (iii) telephone number(s), including area code(s), and (iv) Service account number.



# Service Agreement

[Remainder of Page Intentionally Left Blank]

ONE COMMUNICATIONS

By: _____
(Signature of Authorized One Communications Representative)

Name (please print): Ryan J Porter

Title: Senior Account Executive

Date: 6/9/2009

Customer: Kahn, Litwin Renza & Co., Ltd
(Insert Full Legal Business Name of Customer)

By: _____
(Signature of Authorized Representative of Customer)

Name (please print): Todd Knapp

Title: IT Director

Address for Legal Notices: 951 North Main St, Providence, RI 02904

Attention: Accounts Payable

Fax Number for Legal Notices: _____

Billing Address:
(if different from legal address specified above) _____

Billing Contact email address: _____

Billing Telephone No.: 401-274-2001

Date: 6/9/2009

To the extent that Internet Services are ordered hereunder, the terms of One Communications' Acceptable Use Policy, applies. The OneSolutions℠ Essential, OneSolutions℠ Enhanced, RealBusiness Sense Unlimited Local and Toll Service; RealBusiness Sense Unlimited Local, Toll and Long Distance Service; Customizer℠ Service; Unlimited Ultra7 Service; Advantage Unlimited Service; Unlimited Local Business Line; and Unlimited Business Line; are not available for purchase by auto dialers, telemarketers, dial-up internet service providers, call centers and similar type of businesses. In the event that One Communications determines that the above-noted Customer is such a company, One Communications shall be entitled to either (i) terminate any such Service in which case Customer shall be obligated to pay any applicable termination liability associated with a breach of contract by Customer, or (ii) charge the Customer measured service rates.

To the extent that the Services purchased by Customer hereunder are off-net Services purchased under a 1, 2 or 3 year term plan, the discount associated with such Services, not the price quoted, is guaranteed for the applicable Service Term.

This quote is firm for thirty (30) days from the date specified above unless indicated differently herein. Alterations or changes after thirty (30) days may be made at the discretion of One Communications without notice.



# Customer Authorization

## Preferred Carrier Selection

This is to confirm that Customer has selected One Communications™, as its primary provider of (choose from the following):

☒ local exchange service

☒ intraLATA toll service

☒ long distance service.

This is also to confirm that Customer has designated One Communications as its agent to effectuate the above change(s) in conjunction with each of the phone numbers associated with those Billing Telephone Numbers ("BTN's") identified in the chart below or in the Letter of Authorization submitted with this form, including changing its current Local Exchange Carrier ("LEC")/Primary Inter-exchange Carrier ("PIC"), if any, from its current provider(s) to One Communications. This authorization shall remain in effect until cancelled by Customer in writing.

Customer understands that only one carrier can be selected as the primary carrier for each of the services selected above and that by signing below, its current service provider for the checked services, if any, will be changed to One Communications.

Customer also understands that the selection of a new intraLATA toll or interLATA service provider may result in the imposition of a charge by Customer's LEC/PIC for changing service providers.

## Preferred Carrier Freeze

This is to advise that Customer has elected to impose a preferred carrier freeze for each of the following services (choose from the following):

☒ local exchange service

☒ intraLATA toll service

☒ long distance service.

This is also to confirm that Customer has designated One Communications as its agent to effectuate the above preferred carrier freeze with respect to each of the phone numbers associated with those BTN's identified in the chart below or in the Letter of Authorization submitted with this form.

Customer understands that Customer will be unable to make a change in its carrier selection unless it lifts this preferred carrier freeze and that One Communications will not process any request received from a third party on behalf of Customer to lift the preferred carrier freeze.

Customer also understands that implementation of the preferred carrier freeze may result in the imposition of a charge.

This authorization shall remain in effect until cancelled by Customer in writing.

**BTNs or BANs**

| 100 New DID's | | | |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

☐ (Check if additional pages are attached)

| | |
|---|---|
| Customer: | Kahn, Litwin Renza & Co., Ltd |
| | *(Insert Full Legal Business Name of Customer)* |
| By: | Todd ? ? |
| | *(Signature of Authorized Representative)* |
| Name (please print): | Todd Knapp |
| Title: | IT Director |
| Date: | |

™ For purposes of this form, One Communications means the subsidiary of One Communications Corp. that is licensed to do business in the state in which the services are to be provided to Customer.

### PROCESS OVERVIEW

This section provides an overview of how your service will be established with One Communications and when billing will commence for such service. A representative of One Communications will guide you through the specific steps as your order moves through the implementation process.

— **Order Confirmation Call:** After submission of your Service Agreement and associated paperwork, a One Communications representative will contact you to review your order for completeness and accuracy and to validate pricing. If your order is complex in nature, it may be assigned to a One Communications Sales Engineer who will additionally assess technical configuration requirements and schedule, if necessary, a site survey with you and your equipment vendor(s).

— **Circuit Delivery Call:** If your order requires the installation of a new last mile circuit, you will be contacted by a representative within fourteen (14) business days after the Order Confirmation Call to inform you of the scheduled circuit delivery date. All installations will be completed between the hours of 8:00 AM and 5:00 PM (weekdays only). Additionally, if you have ordered new telephone numbers, the numbers will be provided to you during the Circuit Delivery Call. It is important to note that these numbers are NOT GUARANTEED until AFTER your service has been activated. As such, distribution or publication of telephone numbers prior to service activation is discouraged and at your own risk.

— **Equipment Installation, Testing and Circuit Acceptance:** Your circuit will be tested and accepted from the last mile provider within five (5) business days of being delivered. A One Communications technician may be scheduled to arrive at your service location to install any required One Communications customer premise equipment placed at your service location. For data orders, documentation will be provided by the technician detailing assigned IP addresses and other important information for the establishment of your Internet access and email services.

One Communications cannot guarantee delivery of any voice and/or data service. In the event that One Communications identifies physical last mile facilities obstructions, limitations or impedances, you will be notified and proper justification will be provided along with potential options.

— **Service Establishment**

  ▪ **Data Service:** Service is deemed available at the time the circuit is accepted by One Communications. The technicians will have tested for connectivity to the Internet at the time of their site visit. You will need to complete any required inside wiring (providing connectivity from any One Communications customer premise equipment placed at your service location to your own network equipment) and any required configurations of your own equipment.

  ▪ **Voice Telephone Service:** You will need to complete any required inside wiring (providing connectivity from any One Communications customer premise equipment placed at your service location to your own network equipment) and any required configurations of your own equipment.

    — **New Telephone Number Assignments:** A One Communications representative will notify you of the date that your new telephone numbers are scheduled for turn up. At turn up, One Communications will test your new telephone service and any additional calling features that you ordered to ensure that your service is fully operational.

    — **Telephone Number Porting:** When transferring (or "porting") existing telephone numbers from your existing provider to One Communications, the following additional steps will occur:

      ▪ **Confirmation Call of Scheduled Number Porting Date**

        ○ With New Circuits: Within five (5) business days after circuit acceptance by One Communications, if applicable, you will receive a call from a representative to inform you of the scheduled date of the number conversion.

        ○ Using Existing Circuits: If your telephone service is being delivered on existing circuits, you will receive a call within ten (10) business days after the Order Confirmation Call, to notify you of the specific time and date of the number conversion.

      ▪ **Completion of Number Porting:** Depending on the specifics of your order, on the scheduled port over date you will receive a call or a visit from a One Communications technician to complete the turn up and testing of your telephone service. At this time, One Communications will test your telephone service and any additional calling features ordered to ensure that your service is functioning properly.

— **Commencement of Billing**

  ◆ **Data Service (and ancillary services of Email, Web Hosting, or Domain Name Services):** Billing will commence at the time of service establishment. In the event of a delay that is not directly caused by One Communications, billing will commence no later than five (5) business days from the date of circuit acceptance by One Communications.

  ▪ **Voice Telephone or Integrated Service:** Billing will commence at the time your service is established (for both new telephone number assignments or for numbers being ported from your previous carrier). In the event of a delay that is not directly caused by One Communications, billing will commence no later than fifteen (15) business days from (a) in the case of new circuits, the date that One Communications accepts the applicable circuit, or (b) in the case of number porting orders, the Confirmation Call of Scheduled Number Porting Date.



# Quality Assurance Program

## ROLES AND RESPONSIBILITIES

To ensure a smooth implementation of your services, One Communications will require close collaboration among it, your representative(s) and those of your equipment vendor(s) (if applicable). It is important that all parties clearly understand their respective roles and responsibilities and that we work together closely during the service implementation process.

— **One Communications' Responsibilities**

- Ordering the required circuit(s).

- Delivering, installing and maintaining any One Communications required equipment—a Network Interface Device ("NID"), an Integrated Access Device ("IAD"), a modem or a router at the required service location(s).

- Coordinating with you and your equipment vendors to ensure the successful installation of your new One Communications' services.

- Installing, testing and accepting your new service(s).

- Providing accurate and timely monthly billing for subscribed-to services.

— **Customer's Responsibilities**

- Providing access to, or arranging access for, One Communications' technicians at the applicable service delivery point (telephone/data closet or room).

- As needed, providing appropriate secure and safe space and electrical power for any One Communications' equipment necessary to support the service.

- Providing all required inside wiring and cabling necessary to connect the service from the service delivery point terminal blocks to your telephone equipment and/or data routers.

- Coordinating any scheduled downtime of your network to accommodate all necessary turn up and testing activities.

- Providing and coordinating the scheduling of appropriate technical personnel, in-house and/or other third party vendors, as required, at the time of the various stages of the installation process.

- Upon service installation, notifying your previous carrier(s) of service cancellation with them.



One Communications' Code of Conduct

# Exhibit D

 **KLR** *Certified Public Accountants*
*Trusted Advisors*

Boston • Cambridge • Newport • Providence • Waltham
Phone: (MA) 781-547-8800 | (RI) 401-274-2001
Fax: (MA) 781-547-8801 | (RI) 401-831-4018
www.KahnLitwin.com

## FAX TRANSMISSION COVER SHEET

| To: custmerdisconnect@elnk.com | From: Jose Ramos |
|---|---|
| Phone: | Date: 07/27/2015 02:33:55 PM |
| Fax: 18777471253 | Email: jramos@kahnlitwin.com |

| NUMBER OF PAGES (INCLUDING COVER SHEET) | 9 |
|---|---|

Should you fail to receive all of the pages indicated, or if you experience disruption of the transmission or incomplete information, please call us at 401-274-2001 so that we may retransmit the omitted information.

The documents accompanying this FAX transmission contain information which is confidential or privileged. It is intended for the individual or firm named on this transmission sheet. If you are not the intended recipient, be aware that any disclosure, copying or distribution of the contents of this FAX is PROHIBITED. If you have received this fax in error, please notify us immediately by telephone so that we may retrieve the original documents at no cost to you.

**Message:** This service was terminated 1/29/2013

This form was previously completed and you sent technicians
to look for equipment previously.

Jose F. Ramos
IT Supervisor

Boston   ◊ Cambridge   ◊   Newport   ◊ Providence   ◊
Waltham
Phone:   (MA)  781-547-8800  |  (RI)  401-274-2001  |
888-KLR-8557  |  Fax:   401-831-4018
Email:  jramos@kahnlitwin.com  |  www.KahnLitwin.com  |  Cell
401.439.1909

KLR is one of the largest full-service CPA and business consulting firms in New England and is ranked amongst the Top 100 firms in the United States. From five offices, Boston, Cambridge, Newport, Providence & Waltham, the 190-person firm provides assurance, tax, and consulting services to private and publicly-held companies throughout the United States and abroad. KLR is a member of the Leading Edge Alliance, one of the largest international professional associations of independently-owned accounting and consulting firms.



## DISCONNECT REQUEST FORM

In order to ensure a timely and accurate disconnection of your service(s) it is imperative that you complete the form below and return it to EarthLink using one of the referenced submission methods (Fax or Email) as further referenced in this form.

**Please fill out the required information below.**

**SECTION A:** Required Information– All fields must be populated for processing of your request

**SECTION B:** Service Termination – Enter all services that are being permanently disconnected

      Note – If you are transferring services to a new provider, do not populate those services in this section

**SECTION C:** Transfer of Services – Enter all services that are being transferred to a new provider

      Note – Do not enter these services into Section B, as they WILL BE PERMANENTLY DISCONNECTED

**SECTION D:** Equipment Return – If EarthLink equipment needs to be returned, populate this section

      Please note that billing of your services will cease thirty (30) days from the day we receive and accept a complete, accurate request OR your requested date, whichever is further out. All requests issued _____ for its acceptance by EarthLink Business.

## SECTION A: Required Information

| Account Name | *Account Number |
|---|---|
| k LR | 0000 0000 3939 229 |

| Physical Address of Service Being Disconnected | Other locations affected |
|---|---|
| | ☐ Yes ☐ No |
| _____ MA | Email Address or fax number of person requesting the service disconnect. |
| this was requested years | RAMOS@EARTHLINK.NET |
| New Provider 12912013 ☐ Yes ☐ No | |

**Disconnect Reason**

| | | |
|---|---|---|
| ☐ Service Quality | ☐ Rates/Pricing | ☐ Closing Location/Move |
| ☐ Replacing with Other EarthLink Business Services | ☑ Lack of Features With Current Service | ☐ Modifying Existing Services/Downsizing |

*Requested termination actions shall apply to only those account numbers provided by you in this notice of termination request form.

## SECTION B: Service Termination

**NOTE:** If transferring your services to another provider, do NOT populate this section as you risk disconnect of services prior to transferring to another carrier. Please fill out the Transfer of Services section.

Service Termination is used when you are permanently disconnecting services for which billing has already started with no transfer of services involved. EarthLink Business is required to follow certain procedures when disconnecting functioning services to insure that they are not disconnected in error. To request that one or more services billed at a specific physical address be terminated, please complete the following:

List of Services That You Want Disconnected

**Data + Internet**          1 / 29 / 2013

**Circuit ID**

**Lsee Attached 7         #1**

Referral Recording Needed (Y/N)*

How Long is Recording Needed?          ○ 30 Days   ○ 60 Days   ○ 90 Days   ○ Other

List all Telephone #'s Needing Referral Recording

**N/A**

Referral Recording (Target) ***          **N/A**

**Call Forwarding**

Enter Telephone Line #          Enter Call Forward to #

**N/A**

***If you have multiple telephone numbers targeted to multiple destinations, please list out the current number and target destination for each



#1



## SECTION C: Transfer of Services

NOTE: Do not enter these services into Section B, as they WILL BE PERMANENTLY DISCONNECTED

Please note that billing of your services will cease thirty (30) days from the day we receive and accept a complete, accurate request OR your requested date, whichever is further out. All requests issued must contain all of these criteria to qualify for its acceptance by EarthLink Business.

Transfer of Services It cannot be into Section B are they WILL BE PERMANENTLY DISCONNECTED

**List of Services That You Want Transferred**\*

P/R

\*Please be advised that services requested to be transferred to another provider will not be disconnected by EarthLink Business upon the receipt of this request. Once your new carrier ports/transfers your lines, the services provided in your letter will be disconnected with EarthLink Business at that time. Please be aware that if this changes and any part of the services outlined in your notice to transfer needs to simply disconnect you will need to contact EarthLink Business to address that for you. A follow up with us once your transfer has completed would be appropriate to assure all was taken care of by your new carrier.

## SECTION D: Equipment Recovery

If EarthLink Business equipment needs to be returned, then please complete this section.

If EarthLink Business provided equipment for the services being disconnected, upon disconnection of the service(s), your right to use the applicable equipment will immediately end; you shall return the equipment within thirty (30) days of disconnection. A pre-paid shipping label and/or box will be sent to the service address (unless indicated otherwise in Section D below) including instructions for returning the equipment.

In the event that you fail to return such equipment to EarthLink Business in good working order, reasonable wear and tear accepted, you shall be responsible for the full replacement cost of the equipment and shall pay EarthLink Business all charges associated with the recovery of the equipment.

A charge for the list purchase price of the equipment plus any removal fees will be added to your account if the equipment is not returned. If you wish to purchase or rent the voice communications equipment, please contact your EarthLink Business agent or Account Manager for additional information.

Equipment Return

**Provide the address to which the pre-paid shipping label for any equipment return should be sent** (if different from service address)

Lype attached  #2

EarthLink

800 South Street, Suite 300
Waltham, MA 02453
Phone: 781-547-8800
Fax: 781-547-8801

#2

**Possible Equipment? This has been unplugged for years.**





## Early Termination Charges

Please note that where applicable, Early Termination Fees will be applied to your account in accordance with your Agreement for Service, or such other agreement executed between the parties, and or any applicable Tariff.

## Multiple Locations

If you have multiple locations or services that you need disconnected simultaneously, please use the provided Excel version of the disconnect request.

**NOTE:** To ensure timely processing of your request, the completed 'Authorized Contact Signature' information (as shown on page 4) must accompany your submission of the Multi-Site Disconnect Request Form.

## Submitting Your Disconnect Request

In order to ensure a timely and accurate disconnection of your service(s) it is imperative that you complete this Termination Notice form and return to EarthLink Business using one of the following referenced submission methods:

| Submitting Your Disconnect Request | |
| --- | --- |
| Submission Method | Submit to: |
| Email | customerdisconnect@elnk.com |
| Fax, With Confirmed Receipt by EarthLink Business | 1-877-747-1253 |

You shall notify EarthLink Business in writing if your customer contact person has changed. EarthLink Business reserves the right to reject a termination request received from any person other than your designated customer contact person.

Please feel free to contact our EarthLink Business Disconnect Team with any questions or concerns @ 1-800-344-9934 and an agent will be glad to assist you.

## Authorized Contact Signature

EarthLink Business will not perform the requested work without express consent from the customer. This form may only be submitted to EarthLink Business by the authorized customer contact person listed on the account referenced herein. Please complete the sign-off below prior to submitting this request to ensure that it is acted upon.

| Authorized Contact Signature | |
| --- | --- |
| Authorized Account Contact Sign-off | Name and Signature |
| Print or Type Account Contact Name *(the Contact Name)* | Account Contact Signature *(signed name)* |
| JOSE RAMOS | |
| Account Contact e- Signature *(an electronic form we have)* | I hereby certify that I am the authorized contact or that I am an agent and I agree to the terms and conditions contained in this Disconnect Request Form.  ☑ I Agree |



# EarthLink

Return Service Requested

ALAN LITWIN
KAHN, LITWIN RENZA & CO., LTD
951 N MAIN ST
PROVIDENCE RI 02904-5771

Access your EarthLink account via the myLINK Customer
Portal, located at https://mylink.earthlink.com. If you have
not yet signed into the new myLINK customer portal, we
encourage you to take advantage of the robust changes to
your online account to manage payments and download
and/or print the invoices you can see all invoices, tickets and
billing transactions on one screen. Need help getting on
your account? Please contact Customer Care at
1-800-962-2488 to get started.

## Account Summary

| | |
|---|---|
| Invoice Date | 06/20/2015 |
| Invoice Period | 06/20/2015-07/19/2015 |
| Account Number | 000000003636229 |
| Customer Care | 1(800)962-2488 |

**Past Due**
| | |
|---|---|
| Previous Bill | 3,496.88 |
| Payments as of 06/20/2015 | 3,496.88 |
| Bill Adjustments | 0.00 |
| **Amount Past Due** | 0.00 |

**Summary of Current Charges**
| | |
|---|---|
| Local Telephone Services | 8.16 |
| Data & Internet Services | 2,758.05 |
| Other Products & Services | 293.91 |
| Discounts | 0.00 |
| Adjustments | 0.00 |
| Taxes | 161.96 |
| Surcharges | 274.76 |
| Late Payment Fees | 0.00 |
| **Current Charges Subtotal** | 3,496.88 |
| **Total Amount Due** | 3,496.88 |

### Breakdown of Services (%)

0% Local Telephone Services
0% Long Distance Services
90% Data & Internet Services
10% Other Products & Services

## Remittance Section

| | |
|---|---|
| Account Number | 000000003636229 |
| Invoice Date | 06/20/2015 |
| Invoice Period | 06/20/2015-07/19/2015 |
| Total Amount Due by 07/10/2015 | 3,496.88 |

Payment Amount Enclosed

ALAN LITWIN
KAHN, LITWIN RENZA & CO., LTD
951 N MAIN ST
PROVIDENCE RI 02904-5771

EARTHLINK BUSINESS
PO BOX 88104
CHICAGO, IL 60680-1104

**EarthLink**

ALAN LITWIN
... RENZA & CO., LTD
... 02904-6771

Pago 9 of 4
Account Number         000000008069229
Invoice Date           06/20/2015

| | | Quantity | Charge |
|---|---|---|---|

**Local Telephone Services**
| Monthly Charges | 5.19 |
| Total | 5.19 |

000812978 KAHN, LITWIN RENZA-T1

**Data & Internet Services**
| Monthly Charges | 2,759.05 |
| Total | 2,759.05 |

Data & Internet Services – Monthly Charges
| OneSole DIA In 4.5-SM | 1 @ 0.00 | 0.00 |
| OneSole DIA SM | 1 @ $2,014.08 | 2,014.08 |
| | Total | 2,014.08 |

Total Current Charges by Service Location   2,014.08

**Other Products & Services**
| Monthly Charges | 15.72 |
| 1 Administrative Service Fee @ $278.19 | 278.19 |
| Total | 293.91 |

Total Current Charges by Type of Service   3,060.15

**Taxes**
| Federal Taxes | 21.22 |
| State Taxes | 140.73 |
| Total Taxes | 161.95 |

**Surcharges**
| Gross Receipts Surcharge | 17.03 |
| Universal Service Fund | 240.51 |
| E911 Surcharges | 17.25 |
| Total Surcharges | 274.79 |

Current Taxes, Surcharges and Other Fees   436.74

Current Charges Due   3,496.86

| | Long | Data | Other | | Phone | ... | Total |
|---|---|---|---|---|---|---|---|
| 000812978 KAHN, LITWIN RENZA-T1 | | | | | | | |
| 0.00 | 0.00 | 2,014.08 | 0.00 | 0.00 | 0.00 | 75.52 | 175.52 | 2,944.09 |
| 000812978 KAHN, LITWIN RENZA & CO., LTD | | | | | | | |
| 5.19 | 0.00 | 742.17 | 15.72 | 0.00 | 0.00 | 84.22 | 94.05 | 855.83 |



# Exhibit E

# Jose Ramos

| | |
|---|---|
| **From:** | ServiceDesk <ServiceDesk@corp.earthlink.com> |
| **Sent:** | Tuesday, July 28, 2015 4:56 PM |
| **To:** | Jose Ramos |
| **Subject:** | Disconnect Request Complete – Earthlink Care Ticket Number CAR000005703602 |

**Categories:** Red Category

Dear Customer,

We have successfully started your disconnect of services per your request.

Please allow 1-2 bill cycles to reflect the changes on your bill.

It has been a pleasure working with you in the past and we trust you found EarthLink services and products met your needs. We hope to have the opportunity to do business with you again in the future.

If you have any questions or concerns please contact us.

Order 14832245 generated to disconnect requested services; Data & Inet.

Bill End Date 8/27/2015

Thanks
Earthlink Business Customer Care

Record ID: 63708    Case Number: 16-1193   COMMONWEALTH OF MASSACHUSETTS SUPERIOR
Date Received:  05/25/2016    Time:                                                 STATE OF GEORGIA
Special Service Inst:                                                               GWINNETT COUNTY

ATTORNEY'S ADDRESS                          KAHN , LITWIN, RENZA & CO LTD
                                                      PLAINTIFF
PARTRIDGE SNOW & HAHN LLP
40 WESTMINISTER ST STE 1100

PROVIDENCE RI  02903-9902
                                                      VS.

NAME AND ADDRESS OF PARTY TO BE SERVED      EARTHLINK BUSINESS, LLC, ETAL
                                                    DEFENDANT
EARTHLINK BUSINESS, LLC
C/O C S C
40 TECH PKWY SOUTH #300
NORCROSS   GA   30092

                              SHERIFF'S ENTRY OF SERVICE

PERSONAL ☐    Sex____  Skin Color_____  Hair Color_____  Age____  Hgt____  Wgt____
   I have this day served the defendant_____ personally with a copy
   of the within action and summons.

NOTORIOUS ☐
   I have this day served the defendant _____ by leaving
   a copy of the action and summons at his most notorious place of abode in this County.

   Delivered same into hands of _____ described as follows
      SEX            SKIN COLOR          HAIR COLOR           AGE          HGT          WGT

   _____    _____    _____    _____    _____    _____

CORPORATION ☑
   I have this day served the  *Earthlink Prime  LLC*            a corporation
   by leaving a copy of the within action and summons with  *Christa Sri  F.*
   in charge of the office and place of doing business of said Corporation in this County.

TACK AND NAIL ☐
   I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to
   the door of the premises designated in said affidavit, and on the same day of such posting by depositing a true
   copy of same in the United States Mail, First Class in an envelope properly addressed to the defendant(s) at the
   address shown in said summons, with adequate postage affixed thereon containing notice to the defendant(s) to
   answer said summons at the place stated in the summons.

NON EST ☐
   Deligent search made and defendant _____
   not to be found in the jurisdiction of this Court.

SPECIAL PROCESS
   SUMMONS & COMPLAINT

COMMENTS

Subscribed and sworn to before me this              Date: _5/__/__
_____ day of _____, _____.              Time: _____

_____
Notary Public in and for said County and State
                                                      _____
                                                         Deputy Sheriff

SHERIFF DOCKET _____ PAGE _____          GWINNETT COUNTY, GEORGIA